# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| **JAMES PARKS,** *Plaintiff*, v. **LOUISIANA-PACIFIC CORPORATION,** *Defendant*. | **CASE NO.: 5:18-CV-12** |

## COMPLAINT AND JURY REQUEST

**NOW COMES** the Plaintiff, James Parks ("Parks"), complaining of the Defendant, Louisana Pacific Corporation ("LP"), and alleges the following to be true:

### INTRODUCTION

1  This action concerns disparate treatment, pay discrimination, and hostile work environment based on race, as well as retaliation for engaging in a protected activity.

2  Each paragraph of this Complaint incorporates all others, and each exhibit to this Complaint is alleged as though fully laid out herein.

### PARTIES, JURISDICTION, AND VENUE

3  Parks is an individual who resides in Wilkes County, North Carolina, and is neither a minor nor incompetent.

4      LP is a foreign corporation, incorporated under the laws of the State of Delaware, and maintains a place of business in Wilkes County, North Carolina.

5      This Court has subject-matter jurisdiction over this action pursuant to any/all of the following:

    5.1    28 U.S.C. § 1331, as the action arises out of 42 U.S.C. § 1981.

6      This Court has personal jurisdiction over all parties to this matter pursuant to any/all of the following:

    6.1    Rule 4(k)(1)(A) of the Federal Rules of Civil Procedure, which requires the federal district courts to use the rules for personal jurisdiction of the state where the district court is located;

    6.2    N.C. Gen. Stat. § 1-75.4(1)(d), as LP was engaged in substantial business activity within this state at the time service of process was made upon it; and/or

    6.3    N.C. Gen. Stat. § 1-75.4(3), as this action arises from a local act or omission causing injury to Parks's person or property.

7      Venue is proper in this Court pursuant to any/all of the following:

    7.1    28 U.S.C. § 1391(b)(1), as all Defendants is a resident of the Western District of North Carolina; and/or

    7.2    28 U.S.C. § 1391(b)(2), as a substantial part of the events or omissions giving rise to this action occurred in the Western District of North Carolina.

## FACTUAL ALLEGATIONS

**8** Parks is African American, and was an employee of LP between April 2003 and March 23, 2015.

**9** Parks was a maintenance employee. His duties included ensuring that the manufacturing side of the LP plant was operational for Lines 1 and 2.

**10** Parks performed his job to the legitimate expectations of LP, and was never subjected to any significant discipline prior to his termination.

**11** During his time at LP, Parks was subjected to various symbols of racism on a daily basis. These symbols included, but were not limited to:

    **11.1** References to hate groups such as the Ku Klux Klan; and

    **11.2** Confederate flags displayed prominently on vehicles, clothing, and in rooms at the LP facility.

**12** During his time at LP, Parks was subjected to cruel "pranks" due to his race. These "pranks" included, but were not limited to:

    **12.1** Finding his locker welded shut with a dead, maggot-ridden skunk inside of it;

    **12.2** Severed male deer genitalia being placed on his personal belongings inside of his locker;

    **12.3** Finding that his tools, keys, and/or cart had been hidden up to a quarter-mile away from the location where they were supposed to be; and

    **12.4** Finding hundreds of freeze pop wrappers, many still containing liquid, stuffed into his locker.

**13** During his time at LP, Parks was subjected to various acts of racism on a daily or near-daily basis, both covert and overt. These included, but were not limited to:

**13.1** Being subjected to racial slurs on a frequent basis;

**13.2** Being called racial slurs directly;

**13.3** Increased drug tests which began shortly after Parks's house in an upscale area;

**13.4** Questions as to whether Parks was a drug dealer;

**13.5** Display of a sign reading "We don't want niggers in maintenance" in the LP facility;

**13.6** After the presidential election of Barack Obama, a cartoon from the newspaper depicting a gunman shooting at a caricature of President Obama; and

**13.7** Repeated appearances of the word "Nigger" drawn on areas of the LP facility.

**14** During Parks's time at LP, other employees witnessed overt racist symbols or behavior, including:

**14.1** Nazi symbolism, including swastikas, in multiple locations of the LP facility;

**14.2** Unabashed use of racial slurs; and

**14.3** Discussions involving violence against African Americans due to their race.

15      Managers and supervisors of LP were aware of the racist symbols, pranks, and overt racism encountered by Parks and other African-American employees, but did not act to prevent such conduct.

16      In February or March of 2015, Parks reported to a manager at LP that he had been called a racial slur by a co-worker. Upon information and belief, this was not investigated and by LP, and LP took no action against the employee.

17      On or about March 20, 2015, Parks was forced to come into work just one day after a 3-day run of evening shifts. Employees are supposed to receive 3 days off after such a stretch.

18      While working on or about March 20, 2015, Parks accidentally "locked down" (securely disabled) the wrong electrical breaker prior to working on a piece of equipment. He had attempted to lock down the proper breaker, but accidentally locked down the breaker immediately below it.

19      Shortly prior to this, five white employees had locked down breakers and had received a three-day suspension. At least one of these employees had a prior lock-down write-up and a history of safety issues, one of which resulted in his loss of a finger.

20      Despite this being Parks's first lock-down violation, and a mistake rather than negligence, Parks was suspended and, on March 23, 2015, terminated, with LP citing the lock-down violation as the reason for his termination.

21      Parks has suffered emotional distress and pecuniary injury due to LP's unlawful conduct.

## FIRST CAUSE OF ACTION
### Hostile Work Environment (Race)—42 U.S.C. § 1981

22      Parks is a member of a protected class due to his race.

23     LP was aware that Parks is African American.

24     Parks was subjected to hostility sufficiently severe to alter the conditions of his employment and create an abusive working environment.

25     The environment was both objectively and subjectively hostile.

26     There existed a causal connection between Parks's race and the hostile work environment.

## SECOND CAUSE OF ACTION
### Disparate Treatment (Race)—42 U.S.C. § 1981

27     Parks is a member of a protected class due to his race.

28     LP was aware that Parks is African American.

29     Parks suffered the adverse employment actions of suspension and termination.

30     There was a causal connection between Parks's race and the adverse employment actions.

## THIRD CAUSE OF ACTION
### Retaliation—42 U.S.C. § 1981

31     Parks engaged in the protected activity of opposing a hostile work environment based on his race.

32     LP was aware that Parks had engaged in the protected activity.

33     Parks suffered the adverse employment actions of suspension and termination.

34     There was a causal connection between Parks's protected activity and the adverse employment actions.

## PRAYER FOR PUNITIVE DAMAGES

35  LP is liable for compensatory damages and at least one of the following factors was present and related to the conduct for which it is liable:

    35.1  Malice;

    35.2  An evil motive; and/or

    35.3  Callous indifference to a federally protected right.

36  Officers, directors, and/or managers of LP participated in and/or condoned the conduct constituting the aggravating factor giving rise to punitive damages.

## JURY TRIAL REQUESTED

37  Parks requests a jury trial on all issues so triable.

WHEREFORE, Parks respectfully requests that the Court:

1  Find for Parks and against LP on all matters alleged herein;

2  Award Parks with damages, including punitive damages, in an amount to be proved at trial;

3  Tax the costs of this action against LP and award Parks with reasonable attorney's fees;

4  Enjoin LP from engaging in the unlawful conduct alleged herein going forward and order LP to take appropriate steps to ensure compliance with all federal anti-discrimination laws; and

5  Award all such other and further relief as the Court deems just and proper.

*Respectfully submitted on this, the 19th day of January, 2018.*

/s/ **CRAIG HENSEL**
*Attorney for Plaintiff*
NC State Bar No. 40852
HENSEL LAW, PLLC
Post Office Box 39270
Greensboro, North Carolina 27438
Phone: (336) 218-6466
Fax: (336) 218-6467
craig.hensel@hensellaw.com

# CERTIFICATE OF SERVICE

I hereby certify that on January 19, 2018, I electronically filed the foregoing Complaint and Jury Request with the Clerk of Court using the CM/ECF system, and will serve the following by US Mail, Certified, Return Receipt upon return of Summons:

>Louisiana-Pacific Corporation
>c/o United States Corporation Company
>2626 Glenwood Ave Ste 550
>Raleigh, NC 27608
>*Registered Agent for Defendant*

**/s/ CRAIG HENSEL**
*Attorney for Plaintiff*
NC State Bar No. 40852
HENSEL LAW, PLLC
Post Office Box 39270
Greensboro, North Carolina 27438
Phone: (336) 218-6466
Fax: (336) 218-6467
craig.hensel@hensellaw.com